WALRATH *v.* PACIFIC PAV. CO.

CONSOLIDATED BITUMINOUS ROCK CO. *v.* WALRATH.

*(Circuit Court, N. D. California. March 4, 1890.)*

1. PATENTS FOR INVENTIONS—EXTENT OF CLAIM—PROCESS FOR WORKING ASPHALTUM.
   *Held,* on the evidence adduced, that letters patent No. 319,125 for a process of working and using asphaltum, granted to Judson Rice, Andrew Steiger, and Isaac L. Thurber, on June 2, 1885, are valid; but must be limited to a process in which the bituminous material is placed in a vessel with water and the two are boiled together, during which process steam is generated from the water, which permeating the bituminous material disintegrates it, the claim of the patent being in effect a claim for the use of water and steam combined.

2. SAME—PRIOR STATE OF ART—PROCESS FOR WORKING BITUMINOUS SAND-ROCK.
   *Held,* on the evidence adduced, that letters patent No. 342,852 for a paving, roofing, and building compound, granted to Austin Walrath on June 1, 1886, are valid; but in view of the state of the art, must be limited to a process in which the bituminous material is placed alone in one vessel and steam is generated in another and distinct vessel and conveyed therefrom by a pipe into the mass of bituminous material, so that said steam will permeate and thereby disintegrate the bituminous material.

*(Syllabus by the Court.)*

In Equity.

Bill for the infringement of two letters patent, one numbered 319,125, granted to Judson Rice, Andrew Steiger, and Isaac L. Thurber, on June 2, 1885, entitled "Process of Working and Using Asphaltum;" and the other, numbered 342,852, granted to Austin Walrath, on June 1, 1886, entitled "Paving, Roofing, and Building Compound." The material portions of the specification of the first patent are as follows:

"There are large bituminous deposits in California known as 'asphaltum,' which is used for various purposes, but principally for roofing buildings, in paving streets and sidewalks and for basement floors. The only process for working asphaltum heretofore in use has been to heat it in an open iron receptacle with coal-tar or some oily substance or ingredient, and when in a liquid state to mix it with gravel or coarse sand and subject the combination to an intense heat until thoroughly 'cooked,' and then to apply it in a dissolved or liquid state to the uses for which it was intended. By this process the natural qualities of the asphaltum were destroyed, the action of the fire volatilizing and evaporating portions of its valuable constituents, rendering it brittle and porous, and when exposed to the heat of the sun, or to moisture of any kind, it would crumble and decompose. The object of our invention is to prepare asphaltum for the purposes of roofing buildings, for paving streets and sidewalks, for basement floors, and all other purposes for which it is now commonly used by a new process heretofore unknown or used, and to preserve the natural elastic and adhesive properties contained in asphaltum in its native state without the addition of coal-tar, oil, or any other oily substance whatever, and to reduce the expense of handling it. To carry out our invention, we take the asphaltum in its native state and soften or dissolve it by the aid of hot water, steam, or superheated steam, and when dissolved or in a plastic state to apply it to the uses for which it is intended. We then press it with a heavy iron or rollers heated for that purpose, but not to a temperature that would burn the material, which gives it a smooth surface and renders it compact and solid. When the asphaltum is dissolved or softened by our process, clean sand may be added, if desired, to give it the proper con-

sistency; but without the addition of sand or other ingredient we can also use asphaltum by our process for making floor tiling by placing the material in moulds and subjecting it to pressure which gives it a firm solid form with a smooth surface which is susceptible of a fine polish. In our process of working asphaltum we use an ordinary steam-boiler for supplying the hot water, steam, or superheated steam, and a close or open vessel, stirring by hand or by machinery. Having fully described our invention, what we claim as new, and desire to secure by letters patent of the United States, is:—The process of preparing roofing and paving material consisting in the following steps: *First*, softening pure native asphaltum by the application of hot water or steam thereto, and, *secondly*, pressing it under heated rollers or other heated irons, substantially as and for the purpose set forth."

The material portions of the specification of the second patent are as follows:

"My invention has for its object the production of a new pavement, roofing and building material or compound which possesses in a superlative degree all those qualities which are recognized as being necessary in material to be used for those purposes. The base of my compound is a new natural product which has recently been discovered near Santa Cruz, in California. This substance or material is found in the shape of a deposit or mine, and is called 'bituminous sand-rock,' and no other deposit of such material has ever been discovered within my knowledge. The material or substance seems to have once been a sandstone, but by some process of nature it became saturated with petroleum oil, and possibly other substances, so that in its crude state it presents a dark granular appearance. It is tough, flexible, and tenacious, and has a strong smell of petroleum. By subjecting it to heat the oil can be driven off, and it then becomes hard, like iron, and upon the application of fire, to this iron-like substance gases escape, which burn with a blue flame, leaving nothing but sand as a residue. To manufacture my paving, roofing, and building compound, I take this bituminous sand-rock and heat it by means of steam in a suitable vessel, which may be either open or closed. When sufficiently softened by the steam, it will be in a semi-liquid condition, so that it can be spread by suitable raking implements in a thin course or layer over the surface to be paved or roofed. I then roll and smooth it down with heated irons until it has become firm, and until the water which it has taken up from the steam and the volatile part of the oil have evaporated, which will leave a firm, hard, but elastic surface that will wear a great length of time. For building purposes, and for one class of paving, I convert the bituminous sand-rock into bricks or blocks of the desired size. In this case I treat the sand-rock with steam, as above specified, and in addition I add some earthy or mineral substance—such as sulphate or carbonate of lime—so as to give it density and body, and then I subject it to pressure in moulds, thus forming blocks or bricks, which can be used for paving or building purposes. Having thus described my invention, what I claim, and desire to secure by letters patent, is:—

"1. The process of treating bituminous sand-rock with steam, for the purpose above described..

"2. The process of forming pavements or roofs of bituminous sand-rock which consists in softening the rock by treating it with steam and rolling or ironing it with hot irons to a firm surface, substantially as described.

"3. Bricks or blocks for paving and building purposes, composed of bituminous sand-rock softened by steam and mixed with earthy or mineral substances and subjected to pressure in moulds, substantially as described.

"4. A paving composition consisting of bituminous sand-rock softened by steam, substantially as described."

*Scrivener & Boone*, for complainant in first case, and respondent in second case.

*M. A. Wheaton*, for respondent in first case, and complainant in second case.

SAWYER, J., (*orally.*) I have examined these two cases with care. The first case is a suit by Walrath to restrain the Pacific Paving Company, the defendant in that suit, from infringing upon his letters patent for a process of treating bituminous sand-rock for paving purposes. The second suit is a counter-suit which was instituted by the Consolidated Bituminous Rock Company against Walrath, charging him with infringing upon certain prior patents of which it is the assignee. Both cases are represented by the same counsel and both have been submitted on the testimony taken in the first case. The Walrath patent purports to be a patent for treating bituminous sand-rock for paving purposes, while the other speaks only of asphaltum. It is evident however that both patents refer to the same material because both parties use the same material from the same mine. And it was not inconsistent with this interpretation that the elder patent refers to the material as asphaltum, since it is shown that it actually contains asphaltum, as one of its component parts.

Upon examination I think both of these patents are valid, since the processes described in them are different. Both patents refer to steam as the effective agent for reducing the material, but the patentees produce the steam and utilize it in a different manner. In the prior patent owned by the Consolidated Bituminous Rock Company, the water is poured into the kettle with the material to be dissolved and both are boiled together. During the boiling steam is generated, which passes up through the bituminous material in the kettle partly dissolving it, and the water is got rid of in part in this way. In this elder patent the claim covers the use of both *water and steam* and this is the process the patentee of that patent used. They never used any other until after Walrath obtained his patent and commenced to use his process. I think the process covered by this elder patent is a patentable process and I think the patent is *good and covers the use of steam generated in that mode.* The subsequent patent to Walrath is also for an improvement in processes for treating bituminous sand-rock. Instead of putting the material in water and boiling the two together, thereby generating the steam in the same vessel, *he generates the steam in a separate boiler or vessel,* and dispenses with the use of water in the same kettle or vessel, which seems to be an improvement. It must be an improvement because the patentees of the prior patent adopted this latter mode and proceeding after Walrath had demonstrated its value. I think, therefore, there must be a decree in both cases, in the one case a decree enjoining the defendant Walrath from using steam in the mode applied by the patentee of the prior patent, and in the other case, viz., *Walrath* v. *Pacific Paving Company, I think Walrath has a valid patent for the improvement in generating steam in an outside vessel and conveying the steam alone to the material to be dissolved.*

*Mr. Boone*—Did your honor take notice of the fact that there was a license: that the Walrath Company had a license to use the prior patent?

*The Court*—I do not think Walrath infringed while he had that license. It is only what he has done since the expiration of that license.

*Mr. Boone*—What he has done since then by boiling the material with water in an open kettle and generating steam in that way?

*The Court*—Yes.

*Mr. Wheaton*—Is it intended to limit the decree to the use of the open vessel?

*The Court*—No; either open or closed.

*Mr. Boone*—In the first patent issued to Judson and Rice they practiced it, and they never used it in any other way except in an open kettle, until Mr. Walrath patented it and used his process of generating steam outside.

*The Court*—They do not limit their claim to an open kettle. They put the material in the kettle and boil it and generate the steam in the same vessel. That is their invention. I do not suppose it matters whether the kettle was open or closed.

*Mr. Wheaton*—In the *Walrath Case* the complaint does not charge an infringement before the bringing of the suit. I suppose an injunction follows in that?

*The Court*—Then there is no occasion for anything but an injunction.

*Mr. Boone*—We asked for an accounting.

*The Court*—There is no occasion for an accounting in the *Walrath Case* if the complaint shows that the defendant in that case had only threatened to use the process.

*Mr. Boone*—All we ask for is an injunction—that is sufficient.

*The Court*—Very well.

*Mr. Wheaton*—I presume both parties have contracts on hand and I ask that the injunction be suspended 30 days.

*Mr. Boone*—We have no objection.

*The Court*—Very likely you will be able to arrange it among yourselves when you find out what your rights are. That is the main proposition—to ascertain your rights.