## PACIFIC CONTRACTING CO. v. BINGHAM.

(Circuit Court, N. D. California. May 28, 1894.)

PATENTS—NOVELTY AND INVENTION—ASPHALT PAVING.

The Thurber patent. No. 319,125, claiming a process of working bituminous rock by softening it by application of hot water or steam, and pressing it under heated rollers or other heated irons, although these features of the process were old, covers a patentable invention, consisting in the immediate use and compression of the softened material without the expulsion of moisture; all previous processes having involved either rigid exclusion or evaporation of moisture. Pacific Contracting Co. v. Southern California, etc., Co., 48 Fed. 300, followed.

This was a suit by the Pacific Contracting Company against Bingham for infringement of patents.

Wheaton, Kallock & Kierce, for complainant.

Page, Eells & Wheeler and J. P. Langhorne, for defendant.

GILBERT, Circuit Judge.   This is a suit in equity to enjoin the
infringement of letters patent No. 319,125, issued June 2, 1885, to
Rice, Steiger & Thurber, and letters patent No. 342,852, issued June
1, 1886, to Austin Walrath.   Both patents are for processes in the
preparation of material for asphalt pavements, and laying and roll-
ing the same.   In both the material so to be prepared and laid is
the natural bituminous rock of California, a substance composed
of sandstone and bitumen or asphaltum, commingled in such pro-
portions as to require the addition of no other material for pave-
ment purposes.   So far as this suit is concerned, there is no discern-
ible difference in the processes described in the two patents.   The
earlier, or, as it is called, the Thurber, patent is clearly an anticipa-
tion of the Walrath patent, and it will be unnecessary to make
further reference to the latter, as it conferred upon the complainant
no right not acquired under the earlier patent.   The claim of the
Thurber patent is as follows:

"The process of preparing roofing and paving material, consisting in the fol-
lowing steps: First, softening pure native asphaltum by the application of
hot water or steam thereto; and, secondly, pressing it under heated rollers
or other heated irons, substantially as and for the purpose set forth."

It is admitted that the defendant has laid pavements under the
process above described, and that he has infringed the same if the
patent is held valid.   The defenses relied upon are that the patent
is void for want of novelty and invention, that the invention was
made by only one of the three joint patentees, and that the descrip-
tion of the invention in the specification is not in such full, clear,
concise, and exact terms as to enable any person skilled in the art
to use the same.

It wil be observed that there are two distinct steps in the process
as described—First, softening the material by hot water or steam;
second, rolling it with heated irons while still hot and permeated
with moisture from the steam.   It is in the immediate use of the
material so softened and moistened that the invention which is in-
volved in the process is said to consist.   The other features of the
process—the application of the steam and the use of the heated
rollers—are undoubtedly old.   The bituminous sandstone of Cali-
fornia, which is the subject of this process, is a hard substance when
quarried, and is required to be made soft and pliable before it is
available for pavements.   Prior to the experiments of Thurber and
his associates with hot water and steam, it had been the practice
to soften the rock either by dry-heating the same in caldrons, or
by cooking it with the addition of coal tar.   The result was unsatis-
factory, as the material was either burnt in the process, and thereby
rendered porous and brittle, or, through the addition of the coal
tar, was left sticky and difficult to handle.   The patentees of the
Thurber process discovered that the use of hot water or steam di-
rectly applied to the bituminous rock, and without the addition of
coal tar or any other substance, produced a better result, left the
material in condition for immediate use for paving, and greatly sim-
plified the preparation of the same.   The Thurber patent has been
twice sustained in this court,—in Rock Co. v. Walrath, 41 Fed. 883,

and Pacific Contracting Co. v. Southern California, etc., Co., 48 Fed. 300. In the latter case the same defenses were made that are presented in the case now before the court. It was there held that, although the idea of the application of hot water or steam to a substance for the purpose of rendering it soft and pliable was undoubtedly old, yet that the idea of such application to bituminous rock in the course of preparation for roofing or paving purposes involved an element of invention from the fact that it was opposed to the generally accepted theory of the treatment of that substance, and the universal belief of those engaged in using the same, which was that the material must be kept waterproof, and must only be heated by dry heat, to the rigid exclusion of moisture, and that the presence of water or steam tended to its disintegration and destruction. That decision will be decisive of this case unless the evidence now offered presents the defenses in a new or different light.

The defendant insists that he has furnished new evidence of the want of invention in the Thurber patent in the fact that the same process was described and given to the public in the book of E. Dietrich entitled "Die Asphalt Strassen," published in Berlin, in Germany, in the year 1882. Reference was made to the contents of that volume in the answer to the bill, and it is now produced in evidence. It treats of the construction of asphalt streets and roads. On page 23 is described the process of preparing the bituminous rock of Lobsann for transportation from the quarry and for use in street-making. The Lobsann bituminous rock is described as consisting of limestone unevenly impregnated with bitumen, with portions of the limestone wholly unimpregnated. One of the objects of the process is the elimination of the unimpregnated rock. This is done by placing the crude rock in iron vessels, into which steam is forced. The steam causes the rock to fall to pieces, and the non-impregnated portions are thrown out, while the remainder is ground between rollers. The author proceeds to say:

"But since the material, in consequence of this steaming process, is so completely penetrated with moisture (which afterwards it does not lose in the immediately following process of crushing and grinding), and since the removal of this moisture is of great importance as well in the manufacture of mastic as in the production of compressed asphalt, it might perhaps be preferable to conduct hot air into the vessel of about 100 deg. celsius."

On page 108 the exclusion of the moisture is further insisted upon:

"The expulsion of the natural moisture from the asphalt stone is absolutely necessary, because the powder cannot be pressed into a solid body by roller or press unless it be in a perfectly dry condition. Therefore bring up the temperature to the highest degree possible without running any danger of driving the bitumen out with the water."

In short, the process described by Dietrich consists in first steaming the rock, for the double purpose of separating the unimpregnated portions of the rock from the remainder, and softening the latter for grinding, and, second, evaporating the moisture from the ground product to render it fit for compression into pavement. The Thurber process consists in first softening the rock by steam, and, second, in compressing it into pavement while still hot, and permeated with moisture.

The question whether or not there is invention in the Thurber process is not perceived to be affected by any fact disclosed in the book of Mr. Dietrich. If the process described in that volume has any bearing upon the questions involved in this case, it is rather to emphasize the fact that the Thurber process ran counter to all the accepted ideas of the treatment of bituminous rock for pavement purposes, for Dietrich adheres to the view that all moisture must be excluded. Through the publication of his volume there was constructively brought to the knowledge of all the world the fact that bituminous rock could be and had been softened by the application of steam, and that such application was not deemed injurious provided the moisture so introduced was expelled before compressing and using the material. This was the state of the art prior to the invention of Thurber and his associates. What they added was the idea of the immediate use and compression of the steam-softened material into pavement without the expulsion of the moisture, or perhaps it would be more accurate to say they omitted from the Dietrich process a step which Dietrich and all others considered essential, namely, the evaporation of the moisture which had been introduced in the steaming process. Therein is the essence of the Thurber invention. It was not the discovery of the fact that bituminous rock may be softened by steam. That fact may be presumed to have been known from time immemorial. It was the discovery that the presence of the moisture in the substance thus treated did not tend to destroy and disintegrate the finished product,—the pavement. The complainant is entitled to a decree as prayed for.