## MORRIS & Others, Executors, *v.* McMILLIN & Others, Administrators.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

Argued November 5, 6, 1884.—Decided November 17, 1884.

The patent granted to John S. McMillin, April 16, 1867, for an improvement in applying steam power to the capstans of steamboats and other crafts, was, in effect, for the application of the power of a steam engine to a vertical capstan, by means of the same well-known agencies by which it had been previously applied to a horizontal windlass: it did not involve the exercise of invention, and is therefore invalid.

The late reported cases decided in this court, holding patents to be invalid for want of invention, cited.

The bill was filed against the appellants to restrain the infringement of letters patent granted to John S. McMillin, one of the appellees, dated April 16, 1867, for " a new and useful improvement in applying steam power to the capstans of steam-

boats and other crafts." The invention as described generally in the specification consisted "in connecting the capstan with the freight-hoisting engine or other engine of steamboats by means of shafts and cog wheels, so as to operate the capstan by steam power instead of hand power, as has been generally used heretofore."

The specification then proceeded:

"The following is the descriptive part of the specification, which will be readily understood by reference to the accompanying drawings, in which the same letters refer to like parts in each:

*A* is the deck; *A'* the boiler deck; *B* the capstan; *C* the hoisting engine; *F* the wooden framework of the engine; *D* the engine shaft; *E E* the hoisting rollers, connected with engine shaft by the cog wheels *a* and *b*; *G* is a vertical shaft extending from the hold of the boat to the cargo-wheel shaft *g*. With the latter it is connected—the bevel wheels *c d*; *H* is a horizontal shaft in the hold of the boat at the middle bulkhead, extending from the vertical shaft *G* to the capstan *B*. With the former it is connected by the bevel wheels *e f*, and with the latter by the bevel wheels *g h*. The capstan is permanently fastened to its shaft *J*. The vertical shaft *G* is so arranged that it can be lifted or lowered by means of a set screw *l*, whereby the bevel wheels *c d* and *e f* can be set out or in gear at leisure, interrupting or establishing the connection with the engine. *K K* are the bearings of the shaft; *i i* are hooks, which can be taken off and the cargo-wheel shaft lifted aside, so that any of the hoisting rollers may be disengaged."

"The operation is as follows, viz.: When the engine is set in motion the same is communicated by the described shafts and wheels to the capstan. The line is thrown over the capstan as usual, and one man to pay off the line and another to attend the engine are all the hands necessary in the operation."

The claim was as follows:

"Rotating a capstan placed on deck of a boat by means of an auxiliary engine, and capstan and engine are placed forward of the steam boilers of said boat, substantially as hereinbefore described and for the purposes set forth."

The first application for the patent sued on was filed July 23, 1855. Its claim was for "the application of the steam power of a hoisting or other engine of steamboats, or other crafts, to the capstan, by communicating the power of the engine to the capstan by means of the shafts $G$ and $H$, and the bevel wheels $c, d, e, f, g, h$, or by any other means." This application was rejected. On February 7, 1856, the application was amended by striking out the claim originally made and substituting the following: "I do not claim the application of steam power to the capstan as a principle, but what I do claim is: the arrangement and combination of machinery employed to communicate rotary motion to the capstan from the hoisting or other engine of steamboats and other crafts, namely, the shafts $G$ and $H$, and the bevel wheels $c, d, e, f, g$, and $h$," &c. This amended application was also rejected, and no change therein was made until February 4, 1867, when it was stricken out, and the claim of the patent sued on was substituted by way of amendment. During all this time the drawings and specifications of the first application remained unchanged, and are embodied in the letters patent.

One of the defences relied on by the appellants to defeat the patent was that it was invalid for want of novelty and patentability. Upon final hearing the Circuit Court rendered a decree for the complainants, and the defendants appealed.

*Mr. Rowland Cox* for appellants.

*Mr. W. Bakewell* and *Mr. G. H. Christy* for appellees.

MR. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

We are of opinion that the patent is open to the fatal objection that the device covered thereby did not, in view of the state of the art, involve the exercise of invention, and was therefore not patentable.

The simply working of a capstan by means of steam is not claimed, but, in the amended specification filed February 7, 1856, is expressly disclaimed. The capstan and the auxiliary

engine are both old, the device, consisting in an arrangement of shafts and cog wheels by which the power of the engine is applied to the capstan, was, as averred in the answer, in common public use in flour and grist mills, and cotton and woollen factories, long prior to the alleged invention of McMillin. The testimony shows that both capstans and auxiliary engines have been commonly placed forward of the boilers of the boat, and that, as early as the year 1847, an auxiliary engine had been used for rotating a windlass, both the engine and the windlass being forward of the boilers.

In view of these facts, which are either matters of common knowledge or well established by the evidence, the only field of invention left for the patent to cover was the application, by the old and familiar arrangement of shafts and cog wheels, of the power of an auxiliary engine to a capstan instead of a windlass. A capstan differs from a windlass in this respect only, that its barrel or shaft is vertical, while that of the windlass is usually horizontal. It is plain, therefore, that no such ingenuity as merited the issue of a patent was required for this improvement, but only the ordinary judgment and skill of a trained mechanic.

The following cases illustrate the grounds upon which we base this conclusion:

It was said by Mr. Justice Bradley, in delivering the judgment of this court in *Atlantic Works* v. *Brady*, 107 U. S. 192: " The process of development in manufactures creates a constant demand for new appliances which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different directions. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences."

In *Pennsylvania Railroad* v. *Locomotive Truck Co.*, 110 U. S. 490, Mr. Justice Gray, speaking for the court, declared

it to be the result of the decisions of the court that "the application of an old process or machine to a similar or analogous subject, with no change in the manner of application and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not been before contemplated."

In *Hailes* v. *Van Wormer*, 20 Wall. 353, where the patentee had taken a fire-pot from one stove, a flue from another, and a coal reservoir from the third, and had put them into a new stove, where each fulfilled the office it had fulfilled in its old situation, and nothing more, the patent was held void for want of invention.

In the case of *Phillips* v. *Detroit*, 111 U. S. 604, the patent sued on was for an improvement in street and other highway pavements. The improvement consisted in using round blocks of wood, formed of the sections of small trees, set vertically upon a foundation of sand or gravel, and filling the spaces between the blocks with sand or gravel. The court said that the use of blocks, such as were described, set vertically, was old, that the foundation was old, and the use of filling between the blocks was old, and that the only thing left for the patent to cover was the bringing together, in the construction of a pavement, of these three old and well-known elements; and held that this did not require invention, and that the patent was void. See also *Hotchkiss* v. *Greenwood*, 11 How. 248; *Phillips* v. *Page*, 24 How. 164; *Smith* v. *Nichols*, 21 Wall. 112; *Dunbar* v. *Myers*, 94 U. S. 187; *Heald* v. *Rice*, 104 U. S. 737, 754–756.

Upon the ground stated, we think the letters patent upon which this suit is based are void. The decree of the Circuit Court, by which the patent was sustained, must therefore be reversed, and

*The cause remanded with directions to dismiss the bill; and it is so ordered.*