CLISBY et al. v. REESE.

(Circuit Court of Appeals, Seventh Circuit. June 3, 1898.)

No. 480.

1. PATENTS—INVENTION—ANALOGOUS USE.
An exhaust fan for removing dust and chaff, and an elevator for carrying away the seed, both being old devices, long used in connection with the threshing of grain, there is no invention in adapting them to use with a broom-corn cleaner.

2. SAME—PRIOR USE—ABANDONMENT.
Where for a number of years a farmer had practically used on his own farm a broom-corn cleaner, the fact that he afterwards discontinued such use, and the machine was not thereafter employed by others, does not show that it was an abandoned experiment in the sense of the patent law. If there was any abandonment in such case, it was to the public.

3. SAME—COMBINATIONS—AGGREGATIONS.
A combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes from that given by their separate parts. Hence the use, with an old style of broom-corn cleaner, of an exhaust fan to take away the dust, and an elevator to scoop and carry away the grain, is a mere unpatentable aggregation.

4. SAME—BROOM-CORN CLEANERS.
The Reese patent, No. 505,128, for improvements in broom-corn cleaners, is void for want of invention, and as covering a mere unpatentable aggregation.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This was an action at law by Frederick W. Reese against Ripley A. Clisby, John R. Clisby, and Frank W. Clisby for alleged infringement of a patent for improvements in broom-corn cleaners. The cause was tried to the court without a jury, and judgment was given for plaintiff, to review which the defendants have sued out this writ of error.

James H. Peirce, for plaintiffs in error.

Ephraim Banning, for defendant in error.

Before WOODS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This is an action at law for the infringement of letters patent No. 505,128, issued September 19, 1893, to Frederick W. Reese for improvements in broom-corn cleaners. By stipulation the action was tried before the court without a jury, the

court making a special finding of facts and conclusions of law, hold-ing the patent valid, and rendering judgment for the plaintiff, Reese, here defendant in error. There was a general issue in the case, and the sole question litigated relates to the validity of the plaintiff's patent. This was attacked—First, by making an objection to the introduction of the patent in evidence which was admitted by the court, and exception taken; and, second, by an exception taken to the conclusion of law holding the patent valid. The patent is for a combination of three devices, each of which is conceded to be old; and the contention of the plaintiffs in error is that it is not properly a combination involving invention, but a mere aggregation or bring-ing together of separate elements acting independently, and produ-cing no new or useful result from their co-operation or joint action. There are two claims in the patent, which are substantially the same, as follows:

(1) In a machine of the class described and in combination with the cylinders and feed mechanism thereof, a casing provided with front and rear openings, and arranged to encompass the cylinders, and to permit of the introduction and egress of the material to be operated upon, an exhaust apparatus for with-drawing the dust and similar refuse collecting within the cleaning compart-ment of the machine, and an elevating mechanism; all substantially as and for the purpose described. (2) The combination, with a pair of diagonally-ar-ranged cylinders and the feed mechanism, of a casing provided with front and rear openings, an elevator, and an exhaust mechanism and up-take located above the meeting line of the cylinders and over the refuse collecting bin, substantially as and for the purpose specified.

The eleventh and twelfth findings of the court describing the in-vention are as follows:

(11) A brief description of the mechanism shown and described in the Reese patent in suit will show that it combines five elements as follows: (1) Mechanism for feeding the broom corn into the machine; (2) mechanism for stripping the broom corn, and at the same time discharging the seed; (3) a case for confining and holding the dust and lint, provided with a front and rear opening for the introduction and egress of the broom corn; (4) an exhaust fan for carrying off the dust and dirt, and cleaning the lint and smut from the broom corn; and (5) an elevator for carrying the seed away from the ma-chine to prevent the choking thereof. (12) The five elements above noted go to form an organized machine arranged for the purpose of stripping, cleaning, and preparing the broom corn for the market. It is admitted by the experts for both sides that, if one of these elements were left out, the machine would not be a commercially valuable or safe one to work. It might perform its mechanical functions,—such as the physical dislodgment of the seed from the corn,—but it would not protect the operator from injurious dust or smut unless all of the elements were present.

The first three items of the court's statement of the invention de-scribe the machine for threshing the grain or stripping the seed from the broom, which had been in use nearly 50 years. The fourth and fifth relate to the addition of the exhaust fan for removing the dust, and the elevator for carrying away the seed from the machine. Both these devices are old, and have been used in connection with threshing grain and various other purposes for many years before the plaintiff made claim to his invention. The exhaust fan is like any other ex-haust fan applied for the purpose of drawing the air by suction from a room. If the air happens to contain dust, that is drawn out with

the air. The beneficial use as applied to a threshing machine, whether of broom corn or any other grain, is obvious and well recognized. But, being so long in use in connection with grain-threshing machines and other devices, whether it would involve anything more than ordinary business sense and mechanical aptitude to adapt it to a broom-corn cleaner, either alone or with the other old device of an elevator to take the grain away and deposit it a convenient distance from the operating machine, would not seem to present a very difficult problem for solution. The court, in its ninth finding of fact, says:

"The evidence shows that the art of stripping broom seed from broom corn is old, as is exemplified by a patent granted to L. E. Grosvener, of South Groton, Massachusetts, No. 8,375, dated September 23, 1851. Broom-corn strippers of the Grosvener type continued in use without any material improvement until the date of the Reese patent. A device of this sort was offered in evidence by the defendants, and marked 'The Porterfield Machine.' This machine was in use for a number of years by a farmer named Porterfield in Illinois, but its use was abandoned or discontinued in 1881. It contained devices substantially the same as the Grosvener, with the addition of an elevator for elevating the seed."

In another place the court says, in regard to this Porterfield machine:

"Examining the art briefly, there are no machines found therein that contain all of these elements for this specific purpose. The nearest anticipation of the same might be said to be the Porterfield machine; but this machine lacks the essential features of the fan and casing to operate as the Reese invention; in fact, it is doubtful whether it can be considered more than an abandoned experiment, in that the machine was abandoned nearly fifteen years ago, and has never been in actual use since that date, and was at the time of its use confined to a private farm, worked by a private party, and never put out in public use."

It is quite evident that this finding shows no abandonment of an invention such as would enable some other person to invent the same thing which had been before in use by the public, as shown by the finding, in however limited a way. The finding shows no privacy or concealment, and the machine being in use a number of years shows that it was a practical machine. It is not necessary that everybody should use it, or that the use should always be continued. Some six years before the plaintiff applied for his patent, the use was abandoned. But whatever abandonment there was was evidently to the public, which would give no one the right to obtain a patent for the same device. But the claim of the plaintiff to invention consists in combining these three things, to wit, a broom-corn thresher, an exhaust fan on top of the case to take away the dust, and an elevator at the side to scoop the grain from the bin where it is deposited, and carry it away to a convenient place. There is nothing to show wherein these three things operate jointly to produce anything which is the result of their united action. Each of these elements appear to operate separately to produce its own separate individual result, just as they might in connection with any other business where an exhaust fan was needed to draw away the air from a given space, and an elevator with endless belts and buckets to carry any given substance to another place or to a different level. These elevators are no doubt as old as machinery, and were used by

the Egyptians many thousands of years ago for raising water, and very likely for raising the mud of Egypt, either before or after it was made into brick by the Israelites during their degrading bondage in that country. They have been used for scores of years in this country in every warehouse and grain elevator, and in connection with the common grain-threshing machines throughout the Northwest. Porterfield could have had no motive for concealing such a device, as it was in general use all over the country. The exhaust fan also has been in just as common use. The court below finds a fan present in the Parrott patent, No. 209,708. Here it was used to suck the air containing the dust from wheat and rye, but the use is precisely the same and the change from one kind of threshing to another, or from threshing to stripping, involves no invention. It is also a matter of common knowledge that the same device has been used for many years in connection with corn shellers, grain threshers, and sawmills to take up the flying dust and carry it away from the vicinity of workmen. There is no suggestion in the Reese patent of any diffi- culty in mechanism to be overcome in affixing the seed elevator or the exhaust fan to the broom-corn thresher. On the contrary, he says: "Any suitable elevator may be employed for raising the seed from the hopper." As was said by the supreme court in Heating Co. v. Burtis, 121 U. S. 286, 7 Sup. Ct. 1034:

"If, however, to adapt these separate elements to each other, so that they can act together in one organization, required the use of means not within the range of mere mechanical skill, then it would be true that the invention of such means for effecting a mutual arrangement of the parts would be patentable. * * * Nothing of that, however, appears in this case. The invention described is not of any such device for effecting the combination. No claim is made of that character. The claim made is for the combination, no matter how or by what means it is or may be effected."

These remarks seem quite applicable to this case. The court below in its findings speaks of a co-relation between all the parts, but there is no suggestion of any joint or unitary action producing any new or useful result. There is nothing in the findings or in the case anywhere to show anything more than a mere juxtaposition or ag- gregation. The combination, to be patentable, must produce a dif- ferent force or effect or result in the combined forces or processes from that given by their separate parts. There must be a new result pro- duced by their union; if not so, it is only an aggregation of separate elements. Reckendorfer v. Faber, 92 U. S. 347. Merely bringing old devices into juxtaposition, and then allowing each to work out its own effect, without the production of something novel, is not inven- tion. Hailes v. Van Wormer, 20 Wall. 353. The judgment of the court below is reversed, with instructions to enter a judgment in favor of the plaintiffs in error.