McKENZIE FURNACE CO. et al. v. GREEN ENGINEERING CO.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1905.)

No. 1,075.

PATENTS—INVENTION—FIRE-ARCH FOR FURNACES.

The Green & Gent patent, No. 676,606, for an improvement in fire-arches for furnaces, is void for lack of patentable invention in view of the prior art, and the use of the same combination of elements in fireproof ceilings.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This is an appeal from a decree holding appellants guilty of infringing claim 1 of letters patent No. 676,606, June 18, 1901, to Green and Gent, for improvements in fire-arches for furnaces.

Claim 1 is as follows: "(1) A fire-arch for furnaces comprising a plurality of transverse girders which rest at their ends on the side walls of the furnace, beams attached to the lower edges of the said girders and extending beneath the same, said beams being provided with lateral flanges, and fire-brick provided with lateral grooves in their side faces near their upper surfaces, adapted to engage said flanges of the beams, said fire-brick being suspended from said beams with their upper surfaces below and free from contact with said girders."

The method of assembling the parts is set forth in the description thus: "Referring first to the construction of the fire-arch and means by which the same is supported, said parts are constructed as follows: Said fire-arch as a whole is sustained by means of a plurality of transverse girders, supported at their ends in the side walls, A¹, A², of the furnace. Two of such transverse girders, E, E', are shown in the drawings, of which the forward girder, E, is shown as located in contact with the front plate, D, of the furnace, and the rear girder, E', is shown as located at some distance rearwardly from the same and at the rear of the water-head, c', of the boiler. Attached to the lower side of said girders, E, E', are a plurality of longitudinally arranged metal beams, F, F, arranged in parallel relation to each other and parallel with the side walls of the furnace, and therefore at right angles to the main girders, E, E'. Said girders, E, E', are provided at their lower edges with flanges, e, e', by which the beams, F, F, are attached to the said girders. Preferably, and as herein shown, the said girders are made of channel form, and are provided with flanges at their upper as well as at their lower edges; but the said girders may be of any desired form or cross-sectional shape adapted to afford the necessary strength and rigidity and to provide for the attachment of the beams thereto. Said beams, F, F, are provided on their side faces with laterally extending flanges, f, f, and the arch proper, which is flat, is formed by means of fire-brick, G, G, which are engaged with the flanges, f, f, on the beams, F, F, each brick being provided at each side with a groove, g, adapted to engage the adjacent flange on one of the beams, F. Said beams, F, are so connected with or supported from the girders as to be movable or adjustable sidewise or in a direction endwise of the girders, so that said beams may be slid or moved along the girders to bring them at the proper distance apart to receive or engage the fire-brick, it being intended that the arch be assembled by inserting a row of fire-brick, placing a beam against the same, then inserting another row of brick, placing another beam in engagement therewith, and repeating the same operation until the arch is complete. * * * As an improved means of supporting the beams, F, F, upon or sustaining them from the said girders, E, E', said beams are provided with horizontally extending prongs or fingers, f', which extend upwardly from the upper surfaces of the said beams, and are directed horizontally, so as to overlap and engage the upper surface of the horizontal flanges, e, e', on the lower edges of the said girders, E, E', said fingers serving to permit lateral sliding of the beams on the girders to correspond with the thickness of the fire-brick placed between the beams."

The record exhibits, among others, the following patents: No. 523,249, July 17, 1894, to Upson; No. 526,363, September 18, 1894. to Boileau; No. 576,470, February 2, 1897, to Pearce; and No. 626,560, June 6, 1899, to O'Meara and Calvert.

Further facts are stated in the opinion.

Thomas F. Sheridan, for appellant.

Clarence Poole, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). The so-called flat fire-arch was known before Green and Gent's time. Upson put up beams, with flanges at their lower edges, across the furnace from side wall to side wall, and suspended grooved fire-bricks between the flanges. Pearce said:

"I removably mount in the side walls the straight parallel flanged rails, E, and I string thereon the fire-bricks, F, shaped to fill the spaces between the webs and flanges of adjacent rails, E, by which said fire-bricks are supported. * * * It will also be seen that in case the fire-bricks burn out, an easy renewal thereof may be readily effected by withdrawing endwise one or more of the supporting rails through the opening provided for that purpose in the side walls of the furnace, and stringing new fire-bricks upon such supporting rails."

Upson and Pearce showed only a two-membered structure—the beams supported on the side walls, and the fire-bricks depending from the beams. But Boileau exhibited a structure of three members—a transverse girder supported on the side walls, longitudinal beams attached to and extending beneath the girder, and grooved fire-bricks sustained by the flanges of the beams, and free to be moved thereon without being obstructed by the girder. As Boileau's specification puts it, "When any one or more of the blocks becomes destroyed by heat, it can be readily slipped off the bar and replaced by another one." Boileau's structure, however, was not a fire-arch, or coking breast, which is placed above the grate at the front end thereof, but was a deflector, placed above the grate, near the rear end thereof, and in front of the bridge-wall. And the longitudinal beams were only the length of the girder's width, and but one row of fire-bricks extended across the furnace.

The O'Meara and Calvert patent is for a fire-proof ceiling. A plurality of transverse girders, with flanges at their lower edges, extend from side. wall to side wall. Longitudinal beams, with flanges at their lower edges, are suspended beneath the girders by means of fingers extending upwardly from the beams and overlapping and engaging the flanges of the girders. The fingers of the beams merely rest upon their supporting flanges, and so the beams may be slidden to and fro. Fire-bricks, with grooves along their sides, are sustained by engagement with the flanges of the beams. The top surfaces of the fire-bricks are below and free from contact with the girders. The members of this fire-proof ceiling are assembled in the very way described in the quotations from the patent in suit.

It is urged that a combination of steel beams and fire-bricks in a fireproof ceiling is not a pertinent reference in considering the same combination in a "fire-arch" of a furnace. The so-called fire-

arch is not an arch geometrically, nor is it the curved arch or the flat arch of architecture; the latter of which is a span composed of wedge-shaped members, which support each other, under end pressure, by translating the vertical into horizontal or diagonal thrust. The "arch" of this patent is merely a ceiling construction. And it seems to us impossible that the brick masons and steelworkers who construct a fire-proof sky-scraper or a small vault in a bank should forget or overlook the commonly known facts of their trades when they set up a furnace. But if an outside and independent suggestion were needed that "ceiling construction" was transferable to furnaces for coking breasts and heat deflectors, Upson, Pearce, and Boileau had already furnished it.

Appellee insists, however, that an important contribution to the art of furnace building was made, in this: that the girders rest upon the side walls, that the depending beams abut against the front wall, and that the rear ends of the beams are free, whereby damaged bricks may be removed by stripping out a row or rows of bricks at the free ends of the beams. If the O'Meara and Calvert ceiling were placed in an offset or alcove or archway in a building, where the girders were upheld by side supports, and the depending beams were free at one or both ends, it is obvious that the bricks could be removed by stripping them out at the free ends of the beams. If the beams in the furnace were obstructed at both ends, and the fire-bricks formed a ceiling that came in contact with fixed obstacles on four sides, there would not be even a "new use" of the O'Meara and Calvert combination. The combination consists of the collocation of the three elements—girders, beams, and fire-bricks. It is an inevitable characteristic of the combination that the bricks may be removed whenever and wherever the combination is placed so that one end of the beams is free. But if an outside and independent suggestion were needed that such is the inevitable characteristic of the O'Meara and Calvert combination, Boileau had already shown how to remove from a furnace grooved fire-bricks from the free ends of beams supported by a girder.

True, Green and Gent were the first to couple O'Meara and Calvert's idea of the three-membered construction with Boileau's idea of the removability of the bricks from the free ends of the beams; but so was McMillin the first to apply a windlass engine to a hand capstan (Morris v. McMillin, 112 U. S. 244, 5 Sup. Ct. 2185, 28 L. Ed. 702); and so was Kitselman the first to join the diamond mesh feature of a stationary wire fence machine to the walking feature of a machine that wove a wire and picket fence (Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689).

As Mr. Justice Bradley said in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438:

"To grant a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences."

The decree is reversed, with the direction to the Circuit Court to dismiss the bill for want of equity.