# ALLIANCE SECURITIES CO. v. ROMAN PAINT CO.

Circuit Court of Appeals, Ninth Circuit.
March 4, 1929.

Rehearing Denied April 4, 1929.

No. 5578.

John L. McNab and Byron Coleman, both of San Francisco, Cal., and Samuel E. Darby, of New York City, for appellant.

Thos. A. Banning, Jr., of Chicago, Ill., and Chas. E. Townsend, of San Francisco, Cal., for appellee.

Before GILBERT and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge. Appellant instituted suit for injunction and an accounting based on alleged infringement of letters patent of the United States, No. 1,196,691, and appeals from a final decree dismissing the bill of complaint for want of equity.

The validity of the patent alleged to be infringed was upheld by this court in the case of J. A. Mohr & Son v. Alliance Securities Co. (Standard Oil Co. v. Alliance Securities Co.) 14 F.(2d) 799.

The question presented is solely one of infringement. The patent covers a certain device for atomizing and spraying liquids, and is particularly designed for spraying paint on surfaces to be coated therewith. The claims of the patent are quite fully set forth in the opinion of Kerrigan, District Judge, in the Mohr and Standard Oil Cases (D. C.) 14 F.(2d) 793, and need not here be set out at length.

From that opinion we quote:

"The central thought running through all of them is the supplying of atomizing air and liquid to a spray nozzle, the latter by pressure applied to the liquid itself, and the former by connection with an air compressor; both pressures being under independent and relatively variable control, so as to be maintained at constant, uniform values and ratios. * * *

"It must be, and I think is admitted, that no single element of the Hopkins patent is new. Its only substantial difference from Fisher, as was repeatedly pointed out in the Hopkins file proceedings, is the provision of an automatic pressure regulator, 9, in the air line leading to the discharge nozzle, in addition to and supplementing the hand-controlled plunger valve 16a which already was to be found there."

The main features of the alleged infringing Paasche device and those of the Hopkins patent, as affecting the question in controversy, are concisely stated in the report of the special master, approved by the court below, as follows:

"Plaintiff's device, the Hopkins patent, shows 'an air line 2 extended from a suitable source of supply,' which main air line has two branches; one branch 15 conducting air to the spray nozzle, the other branch 4 conducting air to a closed tank containing the paint or other liquid to be atomized, from which tank there extends a conduit 14 to carry the paint to the spray nozzle. The tubes 14 and 15 are of flexible material, such as rubber. The important elements of the device are two pressure reducing valves placed in the two branches of the main air supply conduit 2; one pressure reducer 9 being placed in the air line between the branching point and the air nozzle, and the other pressure reducing valve 6 being placed between the branching point and the paint tank. Each of these reducing valves is adjustable with respect to the amount of pressure to be passed through them. * * *

"The defendant's Paasche device embodies a self-contained unit to be readily transported on a small truck. It therefore includes the compressor with its actuating motor and its air reservoir, and in addition, the spraying apparatus. Like the plaintiff's device, it includes a pressure tank to contain the liquid to be sprayed, a spraying nozzle, a flexible conduit to the nozzle for atomizing air, a flexible conduit from the paint tank to the nozzle for the liquid to be sprayed, and a main air supply conduit from the air reservoir. This main air supply conduit is connected to the head of the paint tank, and there it branches, one branch continuing as the air tube to the nozzle and the other branch entering the paint tank. Between the point of branching in the air line above referred to and the paint tank is an adjustable, automatic pressure reducing valve, admittedly similar in construction, mode of operation and

280

result with the reducer 6 of the Hopkins patent. There is, however, no pressure reducing valve in the air conduit between the branching point and the spray nozzle. On the top of the compressor, interposed, therefore, between the air reservoir and the compressor, is an automatic, adjustable valve called an unloader. The question in this case, so far as infringement is concerned, is whether this unloader, in its construction, mode of operation, and results, is the equivalent of the reducer 9 of the Hopkins patent."

Upon the particular question of infringement, we quote from the master's report the following material excerpt:

"Briefly, it is essential to the Hopkins invention and to the claims and disclosure of the Hopkins patent that the pressure reducing valve 9 be located between the nozzle and the branching point in the main air supply conduit where, on the one side the air conduit goes to the nozzle and on the other side the air conduit goes to the liquid tank. The location of the valve 9 either on the compressor, as on defendant's device, or at any point between the branching point and the compressor, would effect an entirely different mode of operation and result, and would not constitute infringement. * * *

"The whole idea of the Hopkins structure is the complete independence of the regulation of air pressure to the paint supply and to the nozzle. Given a pressure to that main air supply (which, as I conceive it, would in ordinary practice be regulated), there is a further complete independence attained by Hopkins as between the pressure to the paint supplied to his nozzle and the pressure of the atomizing air. The pressure in the paint tank can be adjusted up to the capacity of pressure in the main air line, so that it is greater than the pressure of atomizing air, a result not possible in the prior art. On the other hand, it can be adjusted so that it is less than the pressure of atomizing air, and of course less than the pressure in the main air conduit. This latter situation was the attainment of the prior art and is the limit of attainment in defendant's structure. * * * In other words, Hopkins' location of his pressure reducers was an act of genius, and established the universal principle of construction and operation of devices of this sort."

What was a new combination solving an existing problem in the art, and covered by the Hopkins patent, does not appear to be shown to have been infringed by the device sought to be enjoined; hence we find no error in the order of the trial court approving and confirming the report of the special master. Morris v. McMillin, 112 U. S. 244, 5 S. Ct. 218, 28 L. Ed. 702; Ray v. Bunting Iron Works (C. C. A.) 4 F.(2d) 214; Clisby v. Reese (C. C. A.) 88 F. 645; Sperry Mfg. Co. v. J. L. Owens Co. (C. C. A.) 111 F. 388.

The decree of the court below is affirmed.