## NATIONAL BRASS CO. v. MICHIGAN HARDWARE CO.

Civil Action No. 791.

District Court, W. D. Michigan, S. D.
June 9, 1947.

plaintiff filed complaint, alleging that defendant had infringed said patent and asking for an injunction against further infringement and an accounting for profits and damages. Defendant answered, claiming that the patent was invalid and denying infringement. In support of its claim of invalidity on the ground of prior art anticipation, defendant cited the following patents: McGrath et al. No. 373,993, November 29, 1887; Taylor No. 467,564, January 26, 1892; Markey No. 705,942, July 29, 1902; Blount, Jr., No. 885,576, April 21, 1908; Dunn No. 1,058,043, April 8, 1913; Weaver No. 1,106,760, August 11, 1914; Hurd reissue No. 14,147, June 6, 1916; Dexter No. 1,502,022, July 22, 1924; Dexter No. 1,697,950, January 8, 1929; Wilson No. 1,719,282, July 2, 1929; Dexter No. 1,779,410, October 28, 1930; Shaw and Company No. 289,258, April 26, 1928 (British patent); Hopkins No. 338,715, November 27, 1930 (British patent). It was stipulated that prior to the beginning of this suit, defendant had sold within this judicial district, door latches of the structure which plaintiff claimed infringed its patent. Plaintiff later gave notice that it claimed infringement only of patent claims numbered 4 and 6.

The only questions presented for decision in this case are: (1) Is plaintiff's patent No. 1,871,633 valid, and (2) if valid, has defendant infringed claims 4 and 6 thereof?

The specifications of the patent in suit state that the object is the production of "a very practical, economically constructed and serviceable latch in which the immediately engaging portion of the latch bolt is movable with respect to another part thereof and is normally spring operated so as to project a distance beyond its housing for engagement with a retaining keeper plate on a door frame, whereby the main spring of the latch construction is not compressed on closing a door but only on the manual operation of the latch to open the door, thereby decreasing resistance imparted by the latch in closing the door, and cutting in half the number of compressions to which the main spring of the latch con-

Frank E. Liverance, Jr., of Grand Rapids, Mich., for plaintiff.

Edmond M. Bartholow, of New Haven, Conn., and Wm. Cyrus Rice, of Grand Rapids, Mich., for defendant.

STARR, District Judge.

Plaintiff corporation is assignee of patent No. 1,871,633 issued August 16, 1932, to Herman Ter Meer for a spring-bolt type of door latch. On November 13, 1945,

struction is subjected." Claims 2, 4, and 6 of the patent in suit provide:

"2. In a latch construction, a housing closed at one end and open at the other, a coiled spring in said housing seated at one end against the closed end thereof, a latch bolt member having an inner end bearing against the other end of the coiled spring and two spaced apart arms extending therefrom for a distance and then turned toward each other, a second latch bolt member comprising a body longitudinally slotted at its inner end portion, a disc across the inner end of said second bolt member in front of which the inturned ends of said arms are positioned, and a coiled spring of less strength than the first mentioned spring interposed between the second latch bolt member and the first part thereof tending to extend said parts of the bolt longitudinally."

"4. In a construction of the class described, a housing closed at one end and open at the other, a coiled spring having one end bearing against the closed end of the housing, a bolt member formed of sheet metal including a disc bearing against the opposite end of the spring and having spaced apart arms extending from opposite edges of the disc longitudinally of the housing for a distance and then turned inwardly toward each other at their free ends, a second bolt member having a longitudinal slot cut therein from its inner end a distance toward its outer end, a member secured at the inner end of the second bolt member across said slot back of the inturned ends of said arms, and a coiled spring mounted in said second bolt member engaged at one end there against and at the other end against the inturned ends of said arms."

"6. A latch bolt comprising, an inner member of sheet metal and including a disc at its inner end, diametrically opposed arms extending from said disc in parallel relation to each other and having free end portions inturned at right angles from the arms toward each other, a second bolt member having the inner portion thereof slotted across its axis and axially bored from its inner end outward for a distance, the inturned end portions of said arms extending into said slots, a member extending across the inner end of said second bolt member back of said inturned ends of the arms, and a coiled spring of light strength located in the opening bored in said second bolt member bearing at its outer end against the second bolt member and at its inner end against the inturned ends of said arms."

It should be noted that plaintiff admits that it has not at any time manufactured door latches under patent No. 1,871,633 in suit, but has only made models of the latch described in such patent in order to illustrate the physical embodiments of the structure. It also admits that the door latches, which it manufactured in quantity and for which it claims the benefit of commercial success in establishing the validity of the patent in suit, were in fact manufactured under a later patent No. 1,883,099 issued October 18, 1932. Plaintiff contends that the latch device which it has manufactured under patent No. 1,883,099 combines all of the elements of the patent in suit. However, examination of said latch device clearly indicates that it is substantially different structurally from the latch device described in the patent in suit. That is, the latch being manufactured by plaintiff under patent No. 1,883,099 does not contain "a disc bearing against the opposite end of the (strong) spring and having spaced apart arms extending from opposite edges of the disc longitudinally of the housing for a distance and then turned inwardly toward each other at their free ends," as a means of connection between the retractor and bolt as described in the patent in suit. Nor does the latch device being manufactured by plaintiff contain "a second bolt member having a longitudinal slot cut therein from its inner end a distance toward its outer end," as described in the patent in suit. Nor does the latch device being manufactured embody "a member secured at the inner end of the second bolt member across said slot back of the inturned ends of said arms." These and other differences clearly demonstrate that the latch being manufactured by plaintiff for the trade under patent No. 1,883,099 is structurally different from and does not embody all the elements described in patent No. 1,871,633 in suit. Therefore, plaintiff may not assert the commercial success of its door-latch

device manufactured under patent No. 1,-883,099 as tending to establish the validity of patent No. 1,871,633 in suit. In National Malleable Castings Co. v. Buckeye Malleable Iron & Coupler Co., 6 Cir., 171 F. 847, 852, 853, the court said:

"The complainants own the patent, and they make couplers; but they do not make the device of the Deitz patent. * * *

"The use we make of the fact that the device has never gone into actual service is in the construction or interpretation of the patent. We are justified, in view of the facts of this case, in exercising much caution in attributing to this patent anything more than is plainly shown and distinctly claimed. Bradford v. Belknap Motor Company C.C., 105 F. 63; Crown Cork & Seal Co. v. Aluminum Co., [4 Cir.] 108 F. 845, 48 C.C.A. 72. This inference from nonuse, under the circumstances, is the converse of the inference drawn in respect of a doubtful patent when a showing is made that it has gone into large use and has displaced other devices. It is an inference against utility from the fact of long nonuse, unexplained by want of means or opportunity."

In Landry Mfg. Co. v. C. P. Rockwell, Inc., 1 Cir., 45 F.2d 89, the court said:

"This lack of commercial success goes far to discredit the value of the invention, if not the validity of the patent."

The patent in suit is admittedly not a pioneer patent, and as no commercial use has been made of it during the 15 years or thereabouts since it was issued, no claim of commercial success may be accredited to it and it should be strictly construed. In Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. Ry. Co., 6 Cir., 172 F. 371, 372, it is stated:

"It is what is called a 'paper patent,' in that it has never been used by the appellant, and that though it is in the business of selling electrical controllers. * * * In view thereof the patent should not be given a broad or liberal construction."

In Roberts v. General Electric Co., 3 Cir., 85 F.2d 964, 965, the court said:

"This is not a pioneer patent. It is now over nine years old and is still a mere paper patent. It is accordingly entitled only to a strict construction, confining its scope to the particular device it disclosed."

As the Congress has not established any tests as a basis for determining invention, it is necessary to look to judicial decisions for guidance in determining whether or not a device constitutes invention. Courts cannot ignore the fact that decisions of the Supreme Court of the United States in recent years indicate a trend toward a higher standard of invention and a return to the policies of that court as represented by its early decisions on questions of patentability.

In Foxboro Co. v. Taylor Instrument Companies, 2 Cir., 157 F.2d 226, 234, the court said:

"Finally, when all else is said, we cannot ignore the change in recent years in the standard of invention adopted by the Supreme Court. It is as idle to pretend that there has been no change (In re Shortell, 142 F.2d 292, 31 C.C.P.A., Patents, 1062), as it would be to protest against it; and it is as much the duty of a lower court to give effect to it, as it is its duty to give effect to any other of the decisions of that court. We are to dispose of the question of invention, so far as we can divine, as we think the Supreme Court would dispose of it."

In Trabon Engineering Corporation v. Dirkes, 6 Cir., 136 F.2d 24, 27, the court said in discussing the phrase "flash of creative genius," which was apparently made the test of invention in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58:

"We are not unmindful of the high standards set in recent years by the Supreme Court as a test of the inventive quality. The Court of Appeals of the Second Circuit (Perkins v. Endicott Johnson Corp., 128 F.2d 208, 218) designates it 'a doctrinal trend' which it is our 'duty, cautiously to be sure, to follow, not to resist.' We heed the admonition to caution as to acquiescence. * * *

"We are likewise aware of the deep concern felt by patent lawyers and research engineers, not only over higher standards of invention, but over what in some quarters has been thought to be an entirely new

984

concept of invention deriving from Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58, where it was said that a new device 'however useful it may be, must reveal the flash of creative genius, not merely the skill of the calling.' We do not interpret the observation as indicating anything more significant than that the quality of invention is 'something more' than expected mechanical skill. Nor do we read the phrase as another conscious effort to define the indefinable."

See, also, Brown & Sharpe Mfg. Co. v. Kar Engineering Co., Inc., 1 Cir., 154 F. 2d 48; Grant Paper Box Co. v. Russell Box Co., 1 Cir., 154 F.2d 729.

In Mueller v. Campbell, D.C., 68 F.Supp. 464, 467, affirmed 6 Cir., 159 F.2d 803, the court quoted with approval from Sinclair & Carroll Co., Inc., v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644, as follows (68 F.Supp. 467):

"A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention', 'more ingenuity * * * than the work of a mechanic skilled in the art,' Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street P. P. & F. R. Co., 107 U.S. 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. City of Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58. This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee."

■ Review of many judicial decisions, including those cited above, indicates that the sound rule for determining the question of the patentability of a device is whether or not it represents discovery or invention, and more ingenuity than the mechanical skill of one versed in the art. These are questions of fact which should be determined by examination of the patent and by comparing it with prior patents in the art.

■ Plaintiff's patent in suit is presumed to be valid, and the burden is upon defendant to establish its claim of invalidity. Mueller v. Campbell, supra; 2 Walker on Patents, Deller's Ed., pp. 1272, 1273, sec. 276. However, the presumption of validity "is a rebuttable, not a conclusive, one." Dennis v. Great Northern Ry., D.C., 51 F.2d 796, 800.

The spring-bolt type of door latch described in the patent in suit is in an old, crowded, and well-worked art, and the scope of the patent is restricted and narrow. It is admittedly a combination patent, but plaintiff contends that its result represents novelty and utility and a substantial improvement in the art. Plaintiff adduced testimony that the latch described in the patent is particularly adaptable for use with light-weight doors such as screen doors, because the beveled edge of the bolt, acting against the striker plate on the door frame, would have to overcome only the light spring in the bolt and not the stronger spring in the retractor, which would permit the door to be easily closed and latched. However, the use of a light spring in combination with a strong spring in a latch device is not new, and is shown in Dexter patents Nos. 1,697,950 and 1,779,410, Taylor patent No. 467,564, and other prior art patents cited by defendant. The construction of a latch device combining a bolt and retractor mechanism and the idea of a slotted bolt with a light spring encased therein to urge the bolt forward into contact with the keeper plate in the door frame, are likewise not new and are anticipated in the prior patents cited. The only mechanical element which the patent in suit added to the combinations of elements shown in prior art patents is the two parallel arms extending forward from the disc base of the retractor, with their free ends turned inward at right angles ahead of the disc base of the bolt, as a connection between the retractor and the bolt. However, prior patents cited disclose methods of combining the action of a retractor and bolt which achieved substantially the same result by substantially the same principle of operation as the patent in suit.

In view of the status of the prior art as shown by the cited patents, the claims of the patent in suit for which plaintiff may assert invention are admittedly narrow. These claims, read in the light of the specifications, measure the claimed invention. Sales Affiliates, Inc., v. Hutzler Brothers Company, D.C., 71 F.Supp. 287. The most that can be said for the patent in suit is that it combines several elements, parts, and mechanisms, old in the art, with the idea of parallel arms extending forward from the retractor base as a means of connection between the retractor and the bolt. Although it may represent some improvement in facilitating manufacture of the device and some slight simplicity of operation over prior devices in the art, the result obtained is not new. This improvement did not constitute invention. Like results, although possibly not as satisfactory, had been attained in prior patents. In Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549–550, 58 S.Ct. 662, 664, 82 L.Ed. 1008, the court said: "The improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination." In Cuno Engineering Corp. v. Automatic Devices Corp., supra, the court said, 314 U.S. 90, 91, 62 S.Ct. 40, 86 L.Ed. 58:

"Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street R. Co., 107 U.S. 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980. 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 356–357, 23 L.Ed. 719."

In Vischer Products Company v. National Pressure Cooker Company, D.C.W.D.Wis., 71 F.Supp. 973, the court said:

"Improving one element in the combination gives no right to reclaim the old combination with the new element. It was held in Bassick Manufacturing Co. v. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251; and Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; that a patentee cannot, by improving one element of an old combination whose construction and operation is otherwise unchanged, in effect, repatent the old combination by reclaiming it with the improved element substituted for the old element."

See, also, National Pressure Cooker Company v. Aluminum Goods Manufacturing Company, 7 Cir., 162 F.2d 26; 1 Walker on Patents, Deller's Ed., p. 217.

As hereinbefore mentioned, the latch device described in the patent in suit was never placed in manufacture. Therefore, it must be strictly construed, and no claim of its commercial success may be asserted. Careful examination of this patent clearly indicates such lack of novelty, utility, and substantial advance in the art as is necessary to establish invention. It represents nothing beyond the mechanical skill in design, construction, and adaptation of one skilled in the art. In summary, the patent in suit is invalid because it does not represent invention within the meaning of the patent law. Therefore, the question of infringment by defendant does not arise.

### Findings of Fact

1. Plaintiff is the assignee and owner of patent No. 1,871,633 issued August 16, 1932, to Herman Ter Meer for a spring-bolt type of door latch.

2. Plaintiff has not at any time during the 15 years or thereabouts since said patent in suit No. 1,871,633 was issued, manufactured door latches thereunder. It has only made models of the latch described in said patent to illustrate the physical embodiments of the structure.

3. Plaintiff has manufactured large quantities of a spring-bolt type of door

latch under a later patent No. 1,883,099 issued October 18, 1932.

4. The door latches manufactured by plaintiff under later patent No. 1,883,099 are structurally different and do not embody all the elements described in patent No. 1,-871,633 in suit.

5. The commercial success of door latches manufactured by plaintiff under later patent No. 1,883,099 do not establish commercial success of the device described in the patent in suit.

6. The claims of the patent in suit were anticipated in Dexter patents Nos. 1,697,-950 and 1,779,410, Taylor patent No. 467,-564, and other prior patents cited by defendant.

7. The patent in suit does not represent discovery or invention. It represents only the mechanical skill of one conversant with and skilled in the art.

### Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter of this suit.

2. The claims of the patent in suit were anticipated in prior art patents.

3. The patent in suit does not disclose patentable invention and is invalid.

4. As the patent in suit is invalid, there is no infringement by defendant.

5. Judgment shall be entered for defendant dismissing the complaint.

6. Defendant may recover costs.