## HALLIBURTON et al. v. HONOLULU OIL CORPORATION, Limited, et al.

### No. D–56.

District Court, S. D. California, N. D.
July 28, 1936.

Lyon & Lyon, of Los Angeles, Cal. (Leonard S. Lyon and Henry S. Richmond, both of Los Angeles, Cal., of counsel), for plaintiffs.

Hill, Morgan & Bledsoe, of Los Angeles, Cal., and A. W. Boyken, of San Francisco, Cal. (Vincent Morgan and William M. Farrer, both of Los Angeles, Cal., of counsel), for defendants.

COSGRAVE, District Judge.

The patent in suit, No. 1,930,987, granted to John T. Simmons, is for method and apparatus for testing the productivity of formations encountered in drilling oil wells and other deep wells. The method consists briefly in sealing off the formation or stratum to be tested from the strata above it by means of a packer, thus separating the two zones and relieving this stratum to be tested from the hydrostatic pressure of the rotary mud above it, and thus allowing the cognate fluids of the stratum to be tested to flow freely into the bore below point where the sealing off is effected and into the empty pipe carrying the packer which is controlled as to opening and closing by valves operated by movement of the pipe, entrapping the sample thus produced, and removing it from the well unmixed with rotary mud or other contents of the drill hole. The zone to be tested is that exposed in the "rat-hole," or a bore of reduced diameter which in oil well drilling regularly precedes the making of the full bore of the drill hole obtained when the rat-hole is reamed out.

The apparatus claims describe a packer surrounding the drill pipe, which, when pressed against the walls of the hole immediately above the stratum to be tested and when resting on the shoulder created by the diminished diameter of the rat-hole, effectually seals the rat-hole from the well above. A pipe conduit leading from the rat-hole through the packer into the empty drill pipe above is provided and is furnished with a valve which is opened by movement of the drill pipe and, after the contents of the rat-hole, or sufficient quantity of the same, has flowed into the empty drill pipe, the valve is closed by a reverse movement of the drill pipe, and the then entrapped sample is taken to the surface.

It seems to me that the Franklin patent, No. 263,330 anticipates both this method and device. It is true that the Franklin patent exhibits a device for control and regulation of the flow of oil wells and does not include the taking of a sample, thus necessarily implying a flowing well. The Franklin device is to be connected with the tubing of the well, is provided with a valve which is opened and closed by turning the tubing part way around from the surface. The tubing is kept closed while the device is being put into the well, opened after it is in the well, and closed while it is being drawn out. Plaintiff urges that keeping it closed while it is being drawn out cannot be accomplished due to the imperfect action of the valve described, but this even if true, is an unimportant feature; for the function claimed for the valve is a complete closure of the pipe while it is being withdrawn from the well. It is plain that although not the claimed object of the invention, a sample may be thus taken out of the well uncontaminated by the contents of the hole above. The use of a packer substantially as the same exists today is necessarily implied from the language of the patent. I am convinced of this both from the contemporary literature on the subject descriptive of the state of the art and from the necessary implications of the patent itself. Without the use of a packer substantially as used today the device could not perform the function attributed to it. The inventor says: "When the tubing is put into the well or withdrawn from it it is desirable that no flow take place through it." If no packer is contemplated there would be no object in "closing the tube for the purpose of allowing the gas to obtain a head." The Franklin patent may not be a tester, but very plainly it can be used as such; for by its use the contents of the producing stratum, sealed off from the remainder of the well unimpeded in its entry into the rat-hole by the pressure of the rotary mud, can be brought undiluted to the surface by a mechanism almost duplicating that shown in the patent in suit.

Judge Hutcheson, then of the Eastern District of Texas, said of the Franklin patent in Edwards v. Johnston Formation Testing Corporation (D.C.) 44 F.(2d) 607, 612: "This device, though designed for and used, not for the purpose of testing strata, but to regulate and control the flow of oil wells, had in it practically every suggestion of plaintiff's, and witnesses testified, and I think established, that it could have been taken as it was or with mere mechanical adaptation and actually used in a rotary well as a tester."

The testimony at the trial showed that a device made in accordance with the teachings of the Franklin patent had, but recently theretofore, been actually used for the purpose of making a test of a water shut-off. The same device would produce a production test.

 It was admitted at the trial that a packer to separate one stratum of the oil well from another is old in the art. The Edwards patent, No. 1,514,585, antedating plaintiff's application, substantially discloses the method and the device of plaintiff. The same is true of Cox, No. 1,347,-534. The description of the Edwards device in the case referred to quoted by Judge Hutcheson from the argument of the plaintiff in that action might properly be used to describe that of the plaintiff in the case at bar.

The object of these patents was precisely that of the patent in suit; that is, to ascertain what the stratum that was being drilled was producing. The difficulties presented were the same. To make a test the inventors first proceed to separate the stratum to be tested from the bore above it. The separation is accomplished by the use of a packer. Communication between the stratum to be tested and the surface is obtained by means of an empty pipe with controlled valves. They then bring the product of the stratum to be tested to the surface for examination, entirely separated from the rotary mud or other contents of the bore above. Progressively the difficulties of the problem increased. The introduction of the rotary drilling system and use of drilling mud; the excessive depths of wells resulting in enormous pressure upon the machinery from the mud column, as well as from the formation; all these presented serious difficulties. It seems to me, however, that except as modified by the necessity of overcoming such difficulties the nature of the testing devices has been the same from the beginning.

The views here expressed are in substantial accord with the decision of the Fifth Circuit Court of Appeals, on the appeal of Edwards v. Johnston Formation Testing Corporation, supra, and reported in 56 F.(2d) 49. That Circuit Court, speaking of the Edwards and Johnston

patents, the latter being the device charged with the infringement here, says: "From this outline of the prior art, and the Edwards and Johnston patents, we think it clear that neither patent is a basic or pioneer patent, but that each is for an improvement only; each making a patentable advance over the prior art but a step rather than a leap." Edwards v. Johnston Formation Testing Corporation (C.C. A.) 56 F.(2d) 49, 50. The same views sufficiently explain my reasons for not following the decision of Judge Bryant, of the Eastern District of Texas, who found the Simmons patent valid and infringed by the Johnston device.

It further fairly appears that the patent in suit was in itself an impractical device. No actual commercial use has been shown. The inventor himself within a month after the patent was taken over by the present owner was employed to devise improvements in the valve structure. This without doubt was due to the difficulty in operating the device at increased depths.

From the foregoing I am compelled to the belief that the Simmons patent, if valid at all, must be restricted to its precise form. The method claims, 8 and 18, are rejected. Defendant's device, differing in operation in important respects, does not infringe.

Having expressed my views on the controlling issue with such brevity as the case permits, there is no necessity for discussing the other questions presented.

Counsel for defendant will propose findings and decree in accordance herewith.