## HALLIBURTON et al. v. HONOLULU OIL CORPORATION, Limited, et al.

### No. 8653.

Circuit Court of Appeals, Ninth Circuit.

July 11, 1938.

Leonard S. Lyon, Henry S. Richmond, and Richard F. Lyon, all of Los Angeles, Cal. (Ben F. Saye, of Duncan, Okl., of counsel), for appellants.

A. W. Boyken, of San Francisco, Cal., and Vincent Morgan and Kenneth K. Wright, both of Los Angeles,. Cal., for appellees.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a final decree of the District Court holding patent No. 1,930,987 "and particularly claims 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19 invalid for want of invention", and not infringed by appellees.

The patent in suit was issued to John T. Simmons on October 17, 1933 on an application filed February 10, 1926 and is for a method and apparatus for testing the productivity of formations encountered in drilling an oil well. Claims 8 and 18 are method claims and claims 9, 10, 11, 12, 13, 14, 15, 16, 17, and 19 are apparatus claims. The apparatus includes a pipe or casing, the end of which is perforated, which is lowered into an uncased extension of the well bore of reduced diameter (called a "rat hole") for testing the formation for gas or liquid. Near the lower end of the pipe, but above a packer, a valve is provided which can be manipulated from the surface of the well to either close or open the interior of the pipe to the fluids of the formation which enter through the strainer from the "rat hole". When the perforated end of the pipe, or "strainer", is placed in the rat hole the valve in the pipe is opened to the atmospheric pressure while the pressure of the mud-laden fluids in the well is sealed off from the rat hole by a "frusto-conical shaped" packer that is adapted to wedge in the upper end of the "rat hole". (Fig. 1)

The patent drawings are shown below in Fig. 1.

Drill stem

Valve

Packer

Strainer

Fig. 1.

The appellants claim that their patent is basic and revolutionary for both process and apparatus. The problem to be solved was that of testing the formation without withdrawing the drilling fluid and without maintaining the circulation thereof. The drilling fluid in rotary drilling is used to keep its hydrostatic pressure against the walls of the drill hole behind and below the unset casing so as to prevent the formation from caving in or being blown in by gas or being forced in by gas, water or oil pressure. The drilling fluid has a specific gravity in excess of water (1.2 or over) and thus will balance the pressure of liquid water or oil in the formation. It also tends to plaster mud against the exposed face of the formation, and to penetrate its recesses and thus to block off pressure. Prior to the patented method in suit tests were made by cementing a casing in the well and emptying the well of the drilling fluids by bailing and swabbing. The operator could then determine whether a productive formation was reached by observing whether or not gas or oil flowed over the top of the well or by pumping the well if the flow was not sufficient to reach the top. This method of testing was both expensive and detrimental to the well for if the test failed to show productive quantities of oil had been reached further drilling operations had to be carried on at reduced diameter.

The idea of the industry was that if the pressure of the drilling fluid was removed by pumping or bailing cave-ins against the casing might prevent further deepening of the well with that diameter of the casing, and if the drill stem and drill were in the well after the drilling fluid was removed cave-ins against the drill stem and drill below the casing might prevent their withdrawal. When the scheme was considered of testing a well without the removal of, or the circulation of, the drilling fluid, the idea was rejected because the plan called for a packer at the top of the rat hole and it was believed that the cave-ins above the packer would prevent the withdrawal of the drill stem. Earlier inventors had approached the problem with this thought in view and had provided two strings of pipe, an outer string and an inner string. (Patent No. 1,347,534 granted E. H. Cox July 27, 1920, Patent No. 1,514,585 granted C. R. Edwards, November 4, 1924). The outer string of pipe was used to provide for circulation of the fluids in the well, to prevent crumbling of the walls of the well down over the packer. The evidence shows that the use of two strings of pipe as disclosed by these patents was not practical. These patents do not disclose the use of the patented process in suit where only a single string of pipe is used and do not anticipate the Simmons patent. By use of the process in suit it was found that the use of a single string of pipe for taking an entrapped sample was successful and practical.

The prior art chiefly relied upon as anticipating the patent in suit is patent No. 263,330 granted to Benjamin Franklin August 29, 1882 for a device for controlling and regulating the flow of oil wells, an analogous art. The device disclosed by this patent is a valve connected with a well tubing, or pipe, constructed to be placed in a well and operated manually to regulate the flow of the well. The patentee states that the device "can be connected with the tubing of the well, either within or without the well, but preferably within at a point above the packer. * * *" The valve structure includes a disk with a half-circle opening in it which lies on a shoulder in the lower half of the valve. It is designed so that the opening in the disk registers

438

with a corresponding opening in the upper part of the valve. The disk in the preferred form of construction pointed out by the patentee is set loosely between the two parts of the valve having pins connecting it with the lower part of the valve which prevent it from turning around but allow it to move vertically. The patent also teaches that the disk may be attached solid to the lower part of the valve and states that "it is better to be loose, as shown; but whether seated loosely and held by pins or lugs, or forming an actual part of the part B, it is in fact a part of the lower half of the valve."

Does the Franklin patent disclose the patented device in suit? Appellants contend that the device disclosed by the Franklin patent is incapable of taking an entrapped sample because it does not appear from the patent that a packer was located on the tubing to seal off the formation below the packer and because the Franklin valve would leak upon removal of the tubing from the well.

Much of the argument as to the Franklin patent centers upon the question of whether or not the Franklin patent contemplates the use of a packer upon the tubing in which he sets his valve. That Franklin contemplated the existence and use of a packer is clearly stated in his patent. As we have pointed out, Franklin states that his valve device can be connected with the tubing in the well, either within or without the well, "but preferably at a point above the packer". The appellees claim that the packer referred to by Franklin is on the tubing, and that this was understood by those familiar with the art. In support of their contention they produced a government publication, "The Tenth Census of the United States", containing a report by S. F. Peckham "on the production, technology and uses of petroleum and its products". Therein is a diagram of a flowing oil well showing an oil well tube extending far below the bottom of the oil casing and into the oil sand with a packer on the tubing above the oil sand, closing off the upper part of the well so that the oil would be compelled to ascend through the tubing. As the packer was well known and in constant use, Franklin made no claim for it or about its use. Upon the theory that the Franklin device contemplated a packer below its valve, the appellees have constructed a device on the Franklin specifications plus the packer and have used the device successfully to make a water shut-off test in an oil well about 1600 feet in depth.

To meet the obvious conclusion that Franklin contemplated a packer to keep back the gas and to force the gas and oil up through the tubing of the Franklin device, the appellants contend that the packer referred to by Franklin was one at the bottom and outside of the well casing placed there to shut off the water from the formations above. Appellants' witness Halliburton claimed that Franklin contemplated a casing housed over at the top above the surface by a dome or cover thus making the entire casing a gas chamber in which to build up gas pressure. Halliburton's conception of the Franklin device is shown by the following drawing presented by him (Fig. 2).

Fig. 2

While this is an ingenuous attempt to explain the operation of the Franklin device without using a packer on the oil tube below the Franklin valve, it finds no support in the language of the patent. If Franklin had contemplated using his device without a packer as suggested by the appellants, then any sort of a shut-off

valve in the tube protruding from the dome would have been sufficient for his purpose. His purpose in using a packer on the tube below the valve was to close the space between the tube and the casing, thus avoiding the possible loss of gas pressure which might otherwise result from the leakage of gas through the joints of the casing and of the tube if he had merely housed over the casing projecting above the surface of the ground and used no packer, as witness Halliburton claims he intended.

The appellant Halliburton, who qualified as an expert patent lawyer and mechanical engineer familiar with the oil industry, testified that if the Franklin device was equipped with a packer and used to test the formation in accordance with the appellants' patent, it would infringe the latter. As we hold that the Franklin device contemplated the use of a packer below the valve to close the upper part of the casing or well from the lower, this testimony is equivalent to saying that the Franklin device anticipated that of the appellants unless there is something involving patentable novelty in the use of the Franklin device for testing a well instead of for augmenting and regulating the flow of a well. Appellants also claim, however, that the valve of the Franklin device will not retain an entrapped sample because one disk of the valve is designed to be held in place by the upward pressure of the gas in the well, and has a slight vertical motion, evidently designed to reduce friction and facilitate the rotation of the upper part of the valve. When the valve is closed the disk, unless sustained in position, will drop down and allow the contents of the tube to escape as soon as the weight of the entrapped sample equals or exceeds the upward pressure of the gas. To this proposition two answers are advanced. The first, that it does not involve invention to tighten what would otherwise be a leaky valve. This view was expressed by the trial court and following its decision, by the Circuit Court of Appeals for the Fifth Circuit, which held the process claims of the patent in suit to be void. Johnston Formation Testing Corp. v. Halliburton, 88 F.2d 970. A second answer is that Franklin in his patent, while showing a valve with a disk having vertical play in his drawings and specifications, expressly states that the lower disk may be secured to the lower part of the valve. It is clear that Franklin did not limit his invention, or its description to the vertical-

ly movable disk. Moreover, the Franklin device built tried and tested by the appellees recovered an entrapped sample.

It is clear that no invention would be involved in tightening what otherwise would be a leaky valve and moreover the Franklin patent disclosed a valve operated by movement of the pipe that did not leak. We conclude that the apparatus claims of the patent in suit were anticipated by the patent to Franklin.

Although we hold that the Franklin device anticipates the combination claims of appellants' patent and could be used in carrying out the patented process, this holding does not negative invention as to the process claims in suit. The apparatus used in carrying out a process may be old and yet the process valid. Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034, 1040; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968. Does the Franklin patent disclose the process in suit? Franklin directs that the pipe be lowered into the well and the valve operated by movement of the pipe to control the flow of oil. The patent also teaches that the tube can be kept empty by keeping the valve closed while it is being lowered and that the valve also should be closed prior to the removal of the tubing.

The Franklin device was to be used in a flowing oil well. Such a well, of course, contains no drilling fluid. Moreover, at the time of the Franklin patent, the rotary method of drilling was unknown. The purposes of the Franklin patent were twofold: First, to provide a method of keeping the tubing of the well closed while it was being lowered into the well or removed therefrom, and second, to provide means of temporarily closing the tubing to allow the gas in the well to obtain sufficient head so that the well would flow. There is no use disclosed of taking an entrapped sample from an unfinished well containing drilling fluid. The device was evidently intended to be permanently attached to the tubing of the well. There is no suggestion of the last step of the patented process in suit, that is, the taking of an entrapped sample from an incomplete well containing drilling fluid.

As we have stated, Simmons faced the problem of providing a method of testing an oil well without removing the hydrostatic pressure necessary for supporting the formation in place. He met this

problem by providing a method operating so quickly that the suspension of the circulation of drilling fluid was not substantially greater than that frequently necessary in drilling operations. Franklin neither considered nor solved this problem.

This discovery constituted invention for. it disclosed what had not been thought possible in the art, that is, that such a device could be set in a well containing drilling fluid while there was no circulation thereof long enough to make a test. It substituted a much better process than had hitherto been in use. The patentee discovered that a well could be safely tested by the lowering of a single string of pipe equipped with a valve packer and strainer and that it was not necessary to set the casing permanently and bail out the drilling fluid, or, if a test were attempted without permanently setting the casing that it was not necessary to provide an extra string of pipe for circulation of the drilling fluid. See, Pacific Contracting Co. v. Bingham C. C., 62 F. 281; Tarr v. Folsom, Fed.Cas. No. 13,756; Lawther v. Hamilton, 124 U.S. 1, 8 S.Ct. 342, 31 L.Ed. 325. In Lawther v. Hamilton, supra, the patentee had discovered that in treating oleaginous seeds for the purpose of extracting oil therefrom, more advantageous results were attainable by dispensing with the use of muller stones in crushing the seeds. The lower court had held that this discovery was not of a new series of acts or steps constituting a process but only of certain mechanical changes in carrying into effect well known steps of the process. In regard to this holding, the Supreme Court said (page 344):

"The view thus taken by the court below seems to us open to some criticism. If, as that court says, and we think rightly says, the omission of the muller-stones is a real improvement in the process of obtaining the oil from the flaxseed; if it produces more oil and better oil-cakes, and it is new, and was not used before,—why is it not patentable discovery? and why is not such new method of obtaining the oil and making the oil-cakes a process? There is no new machinery. The rollers are an old instrument, the mixing machinery is old, the hydraulic press is old; the only thing that is new is the mode of using and applying these old instrumentalities. And what is that but a new process? This process consists of a series of acts done to the flaxseed. It is a mode of treatment. The first part of the process is to crush the seeds between rollers. Perhaps as this is the only breaking and crushing of the seed which is done, the rollers are required to be stronger than before; but, if so, it is no less a process."

Appellee further contends that the process claims are invalid because specifying apparatus to be used in the process and because, it is claimed, the process is the mere function of a machine. These contentions are without merit. A patent is not invalid because requiring specific apparatus in carrying it out. Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S. Ct. 652, 53 L.Ed. 1034; Lawther v. Hamilton, 124 U.S. 1, 8 S.Ct. 342, 31 L.Ed. 325, supra; Owen v. Perkins Oil Well Cementing Co., 9 Cir., 38 F.2d 30. The process in suit is not the function of a machine; it requires manual operation. We conclude that the process disclosed in claims 8 and 18 is valid.

### Infringement.

We hold that the appellees infringed the process claims of the patent in suit. All the steps of the claims in suit are employed by the appellee although the main valve of the appellees' device (which corresponds to the valve in the patent in suit) is opened by vertical movement of the drill pipe while the patented device is opened by a horizontal rotation of the pipe. The fact that the device used by appellees contained auxiliary valves (trip valve to take care of the contingency of main valve opening while being lowered, the equalizing valve, a device to lessen the pull required to unseat the packer, a circulating valve used in an emergency when it is necessary to abandon the test) does not avoid infringement, as the primary process of appellants is employed. They constitute improvements in the device used to practice the patented process.

We find that the Honolulu Oil Corporation participated jointly in infringement in using the process on the wells drilled by it. We hold that there was infringement of the process by the Honolulu Oil Coroporation as well as by appellee M. O. Johnston Oil Field Service Corporation.

Reversed and remanded for proceedings. not inconsistent herewith.