## PEERLESS ROLL LEAF CO., Inc., v. M. SWIFT & SONS, Inc.

District Court, S. D. New York.

Nov. 30, 1945.

Henry J. Lucke, of New York City, for plaintiff.

John Vaughan Groner and Fish, Richardson & Neave, all of New York City, and Nathaniel Frucht, of Providence, R. I., for defendant.

NEVIN, District Judge (Sitting by Designation).

This is a suit arising under the patent laws of the United States. The patent in suit is No. 1,731,415, granted on October 15, 1929, to William F. Grupe, who assigned the entire right, title and interest to Peerless Roll Leaf Co., Inc., plaintiff herein. The patent is entitled "Production of Electrolytically-Deposited Gold in Film or Leaf Form."

Plaintiff, Peerless Roll Leaf Co., Inc., is a corporation organized under the laws of the State of New York, having an office located in Union City, New Jersey. Defendant, M. Swift & Sons, Inc., is a Connecticut corporation. Its manufacturing plant is located at Hartford, Connecticut, but it has an office and established place of business in New York City, N. Y.

Plaintiff filed its complaint on November 19, 1942. On January 9, 1943, defendant filed an answer and on May 12, 1943, an amended answer, asserting therein that the patent is invalid and void and alleging non-infringement. The ownership of the patent by plaintiff is not in dispute.

The cause originally came on for trial before Honorable John M. Woolsey, on November 3 and 4, 1943. This trial was discontinued owing to the illness of Judge Woolsey, since deceased. Subsequently, the cause came on for hearing de novo, resulting in the present record.

The patent contains ten claims. Of these, Claims 2, 6 and 7 only are in issue. Claim 2 is a Product Claim. Claims 6 and 7, Process or Method Claims.

These claims read as follows:

"2. A heat releasable transfer strip comprising a strip of inert material serving as a carrier, a layer of heat releasable medium on one face of the same and a layer of continuously integral gold deposited on said layer of heat releasable material, said layer of gold being substantially of uniform thickness throughout the length of the strip, said layer of gold having a length materially greater than that of beaten gold."

"6. The method of forming a strip of gold supported by a strip of inert material which comprises subjecting a strip of metal as a cathode to an electrolytic bath containing gold. to thereby deposit directly upon such strip of metal a layer of gold, applying the derived composite strip to a strip of inert material serving as a supporting strip by the use of a heat releasable medium, and dissolving the metal strip while the gold layer is supported by the strip of inert material and at a temperature lower than the heat releasing temperature of the heat releasable medium."

"7. The method of forming a strip of gold supported by a strip of inert material which comprises subjecting a strip of metal as a cathode to an electrolytic bath containing gold to thereby deposit directly upon such strip of metal a layer of gold, applying the derived composite 'strip to a strip of inert material serving as a supporting strip by the use of a heat releasable medium, and dissolving the metal strip. while the gold layer is supported by the strip of inert material by the use of a solvent capable of dissolving the metal cathode strip and incapable of dissolving the gold layer and the heat releasable medium."

Defendant concedes infringement of Claim 2, if that claim is valid. As to this, the record (Tr. Pp. 34, 55) shows the following:

"Mr. Lucke: (Of counsel for Plaintiff) Now as to the defendant, * * *. The

defendant concedes that if the claim 2 is valid the defendant infringes. I think I am correct in stating that.

"Mr. Groner: (Of counsel for Defendant) Absolutely correct. * * * The product claim, the single one in issue, is infringed in just exactly the same way as all of the prior art have over 50 years, an infringement of claim 2 here in issue."

During the progress of the trial, counsel for plaintiff made a motion to strike out certain testimony. The Court reserved decision on this motion. The following appears in the record (Tr. Pp. 722, 725.):

"Mr. Lucke: Your Honor, * * * for the purpose of preserving the plaintiff's rights, I feel that I must at this stage make the motion to strike certain questions and answers of defendant's counsel during the cross-examination of the witness Dr. Mantell, upon the grounds, and as appears in the record, (Pp. 593, 595, 596, 598, 599, 600) that these questions are not competent or relevant. * * *

"The Court: Let the record show that the Court will take this motion under consideration; * * * I will leave the motion pend in the record and dispose of it at the time I dispose of the matter on the merits.

"Mr Lucke: That is agreeable to me.

"The Court: Is that course agreeable to counsel, the latter course?

"Mr. Groner: Certainly.

"The Court: Very well."

The Court here and now sustains plaintiff's motion, and in arriving at its decision and conclusions, has not taken the evidence above referred to into consideration.

Defendant challenges the validity of the patent and particularly of Claims 2, 6 and 7 thereof, upon a number of grounds. As to those chiefly relied upon, defendant's counsel made the following statement (Rec. Tr. Pp. 1124-1125): "Mr. Groner: The defendant here raises against the validity of the Grupe patent in suit the following defenses: First, that the patent fails to comply with the provisions of Section 4888 of the Revised Statutes. (Par. 8-C, Amended Answer, Rec. P. 180.) Second, claim 2, which is the single product claim here in issue, is invalid because anticipated. Third, claim 2 also is invalid because it does not represent invention over the art. Fourth, claims 6 and 7, which are the method claims here in issue, are invalid because not supported by the disclosure of the patent. And claims 6 and 7 additionally, are invalid because not representing invention in view of the prior art."

While numerous authorities are cited by counsel in their briefs and arguments in support of their respective contentions, the Court is of opinion, in view of its conclusion, that no useful purpose would be served in a discussion of them here. Sufficient reference, too, is made to the prior art and to Swift Patent No. 2,354,073 (issued on July 18, 1944) in the Findings and Conclusions hereinafter set forth and made a part hereof.

In a recent decision (May 21, 1945) the Supreme Court in the case of Sinclair & Carroll Co., Inc., v. Interchemical Corporation, 325 U.S. 327, at page 330, 65 S. Ct. 1143, 1145, 89 L.Ed. 1644 say: "A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention,' 'more ingenuity * * * than the work of a mechanic skilled in the art.' Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street, [P. P. & F.] R. Co., 107 U.S. 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. [City of] Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Machine Corporation v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corporation v. Halliburton, 306 U.S. 550, 59 S.Ct 662, 83 L.Ed. 980; Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58. This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee."

The Court is of opinion and so finds that in view of and under the foregoing decision, as well as upon other grounds set out in its Findings and Conclusions here-

with, Claims 2, 6 and 7 of the patent in suit are invalid and void, and that plaintiff's Bill of Complaint should be dismissed with costs to the defendant, as prayed for by defendant in its answer.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the Court has arrived at the following:

Findings of Fact

1. This is a suit for patent infringement in the usual form. The Court has jurisdiction.

2. The patent in suit is Grupe No. 1,-731,415 which issued October 15, 1929 on an application filed February 23, 1927. Claim 2, for a product, and Claims 6 and 7, for a method, are in issue.

3. Plaintiff's ownership is admitted.

4. The patent in suit relates to gold leaf in roll form, intended to be stamped on book covers, etc., and to the method by which the product may be made.

5. The product of Grupe patent No. 1,731,415 comprises a layer of paper or other equivalent carrier or support; a layer of wax or other heat-releasable adherent; a layer of gold; and, if desired, a layer of sizing, such as shellac. The layers are of indefinite length. The layer of sizing constitutes no part of any of the claims in issue.

6. The process of the patent contemplates the sequential steps (a) of subjecting a silver belt cathode to suitable electrolytic action to deposit a film of gold on one of its faces; (b) of joining the gold face of the gold-silver belt to the wax face of a wax-paper band, intended to serve as a carrier or support for the gold; and (c) of dissolving off the silver in a bath of nitric acid or the like, to leave a gold-wax-paper composite.

7. The process of the patent contemplates that it be performed in a continuous operation, as contradistinguished from a "batch" operation; that is, that the gold be deposited on the belt cathode while the belt cathode is moving through the electrolytic bath, that the wax-paper be joined to the gold-silver while both the band and the belt are in movement, and that the

silver be dissolved off while the silver-gold-wax-paper are moving through or over the dissolving bath.

8. The process of the patent is stated in broad general terms and many of the details, essential to successful operation are not disclosed, either specifically or by inference.

9. Among the details essential to successful operation of the method of the patent, but as to which the patent is silent, are the following: (a) the current density in the electrolytic bath, (b) the speed of the belt cathode through that bath, (c) the heat and concentration of that bath, and (d) the necessary interrelationship or balance between these factors; (e) the means by which the belt cathode is driven at a constant speed throughout its movement; (f) the concentration of the nitric acid in the dissolving bath; (g) the speed of the silver-gold-wax-paper through or over that bath; (h) the maintenance of heat control of that bath; or (i) the necessary interrelationship or balance between those factors.

10. The failure of the patent to disclose a method susceptible of successful practice reflects a lack of knowledge of such process upon the part of the patentee. The proof shows that patentee was unable to practice such process successfully until Thanksgiving Day, 1930, which was three years and nine months after the application was filed and more than one year and one month after said patent issued. The reasons asserted by plaintiff to explain its delay in achieving a successful operation are irrelevant.

11. The patent fails to give "a written description * * * in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains * * * to make, construct, compound, and use the same."

12. As of the date, February 23, 1927, of the filing of the application which issued as the Grupe patent in suit, the art was thoroughly familiar with gold leaf in roll form and intended to be stamped on book covers, etc.

13. The most widely known and used of these prior art products was gold beaters

gold leaf in roll form. In making this product, the gold was rolled, then beaten to leaves approximately four inches square and of the approximate thickness of about two one-millionths of an inch. Thereafter, the leaves were laid on the waxed face of a layer of paper or other equivalent carrier or support, the end of each leaf overlapping the end of the preceding leaf. This overlapping caused the overlapped portions of the leaf to bond, or cold-weld, in such a way that they could not be dissevered without destroying the leaf, thus forming a layer of continuously integral gold.

14. These prior art gold beaters gold leaf rolls comprised a layer of paper or other equivalent carrier or support; a layer of wax or other heat-releasable adherent; a layer of gold; and, if desired, a layer of sizing, such as shellac. The layers are of indefinite length. Such rolls are shown in the prior art patents to Tschieke, No. 1,376,737 of 1921, and to Grupe, No. 1,515,676 of 1924. Such rolls have been manufactured and sold by plaintiff since 1924 and by defendant since 1914.

15. The prior art gold beaters gold leaf rolls show every element of Claim 2 of the Grupe patent in suit, are intended for the same use and actually are used interchangeably therewith on the same stamping machines and on the same work; and cannot, on the work, be distinguished from each other.

16. If Claim 2 of the Grupe patent in suit is construed as limited to a product employing a layer of electrolytic gold, it is directed simply to an old combination wherein a single element is substituted for an equivalent old element and without any new and unexpected result. This does not amount to invention.

17. Prior to the patent in suit Reinfeld patent No. 454,381 of 1891, disclosed the making by electro-deposition of gold leaf which might be of any size which could conveniently be handled and which was mounted on paper or other suitable material. Endruweit British patent No. 22,-859 of 1897 disclosed a product comprising a layer of paper, a layer of adherent and a layer of electrodeposited metal which would include gold. Cowper-Coles patent No. 951,365 of 1910 shows a similar product. The metal layer of the product of all of these patents is continuously integral and is, to the same extent as the similar layer of the patent in suit, of substantially uniform thickness.

18. Neither Reinfeld nor Endruweit nor Cowper-Coles shows a heat-releasable adherent securing the gold to the paper carrier or support. However, since the Coe patent No. 508,869 of 1893 the art had been fully instructed as to the use of any desired type of adherent and it did not amount to invention to substitute for the permanent adherents of Reinfeld, Endruweit or Cowper-Coles the equivalent heat-releasable adherent of Coe, or of Tscheike, or of Grupe patent No. 1,515,676. Tscheike discloses the use of both the permanent and the heat-releasable types, to be chosen according to need, and the prior art Grupe patent was, in 1927, held invalid as not representing invention. Peerless Roll Leaf Co. v. Lange, 3 Cir., 20 F.2d 801, 803.

19. Claim 6 of Grupe patent in suit concludes with the step that the belt cathode be dissolved "at a temperature lower than the heat releasing temperature of the heat releasable medium." The specification of the patent does not state the temperature at which the heat-releasable medium releases, nor does it refer directly or inferentially to the temperature of the dissolving bath, nor does it state or suggest any relationship between such temperatures. The disclosure of the patent in no way supports the final step of Claim 6.

20. Claim 7 of said Grupe patent in suit concludes with the step that the belt cathode be dissolved "by the use of a solvent capable of dissolving the metal cathode strip and incapable of dissolving the gold layer and the heat-releasable medium." The specification of the patent teaches the use of a bath "containing nitric acid or the like." Nitric acid will dissolve the metal cathode strip but unless carefully regulated it will spoil both the gold layer and the heat-releasable medium. The specification of the patent teaches

nothing as to such regulation. The disclosure of the patent does not sufficiently support the final step of Claim 7.

21. In electrodepositing a metal, such as gold leaf, on a metallic cathode, the prior art had found that the deposit adhered to the cathode unless special steps were taken. Reinfeld No. 454,381 of 1891, Endruweit British No. 22,859 of 1897, Edison No. 880,484 of 1908 and Cowper-Coles No. 951,365 of 1910 had taught that if the cathode were pretreated to form a thin and substantially invisible film of an oxide or a sulphide on its surface, the deposit could be removed mechanically, so that the cathode could be repeatedly reused. Outerbridge No. 198,209 of 1877 and Demel No. 1,512,285 of 1924 taught that after the deposit was made the deposit might be removed by dissolving off the cathode. Therefore, prior to the Grupe patent in suit, the art knew alternative methods of removing the deposit from the metallic cathode.

22. Substantially all of these prior art patents had recognized that the deposited metal was so fragile that it required some sort of carrier or support, and had provided that the deposited metal be adhered to a backing such as paper. Edison and Demel disclosed no such carrier or support, but both Endruweit and Cowper-Coles provided in a continuous system for the mating of a strip of paper to the metallic deposit, while still on the metallic cathode.

23. The Grupe patent in suit followed the prior art Demel patents Nos. 1,513,696 and 1,512,825 of 1924 in the use of the spooled belt cathode, in the forming of a layer of gold thereon in an electrolytic bath, and in the dissolution in a nitric acid bath of the belt cathode. The only respect in which said Grupe patent in suit did not follow Demel was in its mating of the gold face of the gold-cathode belt to the adherent coated face of the paper carrier or support. It did not amount to invention to take this old and well known step, or, in doing this, to use whatever type of adherent was desirable.

24. There is no evidence in this case that either the product or the process of the Grupe patent in suit was attended by commercial success, or that the method claims here in issue were employed in the manufacture of any of plaintiff's rolls introduced at the trial.

## Conclusions of Law

1. The Grupe patent in suit is invalid and void for failure to comply with R.S. Sec. 4888, 35 U.S.C.A. § 33, both with respect to insufficiency of its teaching and lack of particularity in its claims.

2. The issuance to defendant of Swift patent No. 2,354,073 on July 18, 1944, on an application filed December 23, 1939, is entirely without effect on the merits of this cause; defendant is not estopped from asserting the invalidity of the Grupe patent in suit and this Court is not foreclosed from a full consideration of all pertinent prior art.

3. Claim 2 of said Grupe patent in suit is invalid and void because anticipated by the prior art beaten leaf and also by the prior art rolled metal rolls.

4. Claim 2 of said Grupe patent in suit is invalid and void as not representing invention because simply an old combination having one new element substituted for an equivalent old element, and without any new and unexpected result.

5. Claims 6 and 7 of said Grupe patent in suit are invalid and void because not representing invention over the prior art patents relating to the deposition of gold or other metals in a continuous system.

6. The complaint herein should be dismissed with costs to the defendant.

7. A decree should be entered accordingly.